# In the United States Court of Federal Claims

No. 18-1007

(Filed: February 25, 2021)

| | |
|---|---|
| **************************************<br>JULIUS R. HENDERSON,    *<br>                              *<br>            Plaintiff,    *<br>                              *<br>    v.                        *<br>                              *<br>THE UNITED STATES,            *<br>                              *<br>            Defendant.    *<br>************************************** | RCFC 12(b)(1); Subject-Matter Jurisdiction; Statute of Limitations; 28 U.S.C. § 2501; Military Pay Act; 37 U.S.C. § 204; Military Disability Retirement Pay; 10 U.S.C. § 1201; Motion to Transfer |

*Julius R. Henderson*, Lakewood, Wash., *pro se*.

*Christopher Loren Harlow*, U.S. Department of Justice, Civil Division, Washington, DC, counsel for Defendant.

## ORDER AND OPINION

**DIETZ, Judge.**

Julius Henderson, a *pro se* plaintiff, asserts multiple claims against the United States arising from his time in the United States Marine Corps. Before the Court are Plaintiff's Motion to Transfer and Defendant's Motion to Dismiss for lack of jurisdiction or, in the alternative, for failure to state a claim. For the reasons described below, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Motion to Transfer is **DENIED**.

### I.   BACKGROUND

Mr. Henderson served in the Marine Corps from 1972 until March 5, 1977, at which time he was "discharged on a bad conduct discharge." Compl. at 3, ECF No. 1-1. While the exact circumstances of his discharge are unclear from the complaint, Mr. Henderson states that he was suffering from mental issues, including that he was "depressed and hyper manic schizo [*sic*]" and "delusional and hallucinating." *Id.* Eight years after his discharge, Mr. Henderson states that he was placed in a "neuropsychological ward" for thirty years until he was fully released in March 2016. *Id.* However, prior to his full release, Mr. Henderson states that he was "furlough[ed]" in 2004, at which time he was able to retrieve his medical records and return home to his family. Pl.'s Resp. at 1, ECF No. 11.

Marine Corps records indicate that Mr. Henderson sought relief from the Board for Correction of Naval Records (BCNR) four times, with the first petition being denied in 2005. *See* Def.'s Ex. 1, ECF No. 10. The records show that Mr. Henderson sought "an upgrade to [his]

characterization of service, change to [his] narrative reason for separation to disability, and 44 years of back pay" based on his mental condition. *Id.* at 8. The Board denied his claims in 2005, concluding that "the documented evidence does not substantiate a diagnosis of schizophrenia during [Mr. Henderson's] time in service" and that "there is no evidence to support the contention that [his] misconduct was due to schizophrenia." *Id.* at 2. In 2008 and 2012, the BCNR declined to reconsider its 2005 decision because Mr. Henderson had not produced new material evidence. *Id.* at 4, 6. In 2017, the BCNR acknowledged that Mr. Henderson submitted new information not previously considered by the BCNR but ruled that it was not sufficient to change its decision because "[t]he fact that [he was] later diagnosed with schizophrenia . . . did not convince the Board [he was] symptomatic during [his] enlistment." *Id.* at 8. The BCNR was "unable to find sufficient evidence to support a finding that [he was] not mentally responsible for [his] misconduct" and determined that his bad conduct discharge was proper. *Id*. at 8-9.

## II.   PROCEDURAL HISTORY

Mr. Henderson initially brought his complaint on August 30, 2017 in the United States District Court for the Eastern District of Missouri. *See* Compl. at 1. He requested "the court to overturn [his] discharge to a medical discharge[,] restore [his] benefits and back pay for past yrs [*sic*]." *Id.* at 4. He also sought "4 million dollars" for alleged "maltreatment." *Id.*

On May 9, 2018, upon motion by the Defendant, the District Court transferred the case to the United States Court of Federal Claims. Mem. and Order of Transfer at 1-2, ECF No. 1-4. The District Court based the transfer on its reading that Mr. Henderson sought relief in excess of $10,000 for claims of wrongful discharge and disability retirement benefits, both of which fall under the exclusive jurisdiction of the Court of Federal Claims. *Id.* at 1-2. Additionally, the District Court found that the transfer was in the interest of justice to allow this Court to evaluate Mr. Henderson's allegations of disability and their potential impact on Tucker Act's six-year statute of limitations. *Id*. Following the transfer, Mr. Henderson failed to file an amended complaint with this Court, and thus his original complaint became operative. *See* Order, ECF No. 4.

On July 22, 2018, Mr. Henderson sent a letter requesting that the Court "return this case back to [his] home town St. Louis Mo [*sic*]" and to have his case heard by "a jury of military or civilian peers[.]" Pl.'s Mot. to Transfer, ECF No. 5. The Court interpreted and filed this letter as a motion to transfer. The government opposes the motion on grounds that no other court possesses jurisdiction over Mr. Henderson's claims. Def. Resp. at 1, ECF No. 9.

The government filed a motion to dismiss on September 26, 2018. Def.'s Mot. to Dismiss, ECF No. 10. It filed the motion pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction, or in the alternative, Rule 12(b)(6) for failure to state a claim.[1] *Id.* at 1. The government acknowledges that Mr. Henderson's complaint contains three potential claims—one each for mistreatment, wrongful discharge, and disability retirement benefits. *Id.* The government argues that this Court lacks jurisdiction over each of these claims. *Id.* Mr. Henderson

---

[1] Because Mr. Henderson's claims are properly dismissed on jurisdictional grounds, it is unnecessary to evaluate the government's Rule 12(b)(6) argument.

2

filed a response in which his only discernable argument against dismissal appears to be that he has been "incoherent and incapacitated" since 1974 and was unable to retrieve his medical records until 2004. Pl.'s Resp. at 1.

### III.   LEGAL STANDARDS

Defendant moves to dismiss Plaintiff's complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC"). Def.'s Mot. to Dismiss at 1. Jurisdiction is a threshold issue that a court must resolve before proceeding to the merits of a case. *Hardie v. United States*, 367 F.3d 1288, 1290 (Fed. Cir. 2004). When considering a motion to dismiss for lack of jurisdiction, "a court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011). The plaintiff bears "the burden of establishing jurisdiction, including jurisdictional timeliness . . . ." *Alder Terrace, Inc. v. United States*, 161 F.3d 1372, 1377 (Fed. Cir. 1998). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

"Although a *pro se* plaintiff's complaint is held to a less stringent standard than those prepared by counsel, *pro se* litigants are not excused from meeting jurisdictional requirements." *Spengler v. United States*, 688 F.App'x 917, 920 (Fed. Cir. 2017) (citations omitted). A *pro se* plaintiff is entitled to a liberal construction of his pleadings. *Johnson v. United States*, 123 Fed. Cl. 174, 177 (2015) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The leniency afforded to *pro se* plaintiffs, however, does not give the court "discretion to bend…[or] take a liberal view of jurisdictional requirements for *pro se* litigants." *Stanley v. United States*, 107 Fed. Cl. 94, 98 (2012). As such, *pro se* plaintiffs—as with all plaintiffs—must establish this Court's jurisdiction over their claims by a preponderance of the evidence. *Spengler*, 688 F.App'x at 920.

The Tucker Act confers upon this Court jurisdiction over "any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1). "The Tucker Act itself does not create a substantive cause of action . . . ." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005). Rather, to establish this Court's jurisdiction, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id.*

This Court's jurisdiction is further limited by the applicable statute of limitations, which bars every claim "unless petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. A claim under the Tucker Act accrues "when all events have occurred to fix the government's alleged liability, entitling the claimant to demand payment and sue here for his money." *Martinez v. United States*, 333 F.3d 1295, 1303 (Fed. Cir. 2003) (internal quotations omitted). Regarded as a "condition of the government's waiver of sovereign immunity[,]" *MacClean v. United States*, 454 F.3d 1334, 1336 (Fed. Cir. 2006), this six-year statute of limitations creates a "jurisdictional prerequisite" to bringing suit in the Court of Federal Claims. *John R. Sand & Gravel Co. v. United States*, 457 F.3d 1345, 1355 (Fed. Cir. 2006). In other words, a claim that is not brought within six years after it accrues must be dismissed for lack of

subject matter jurisdiction. *See id.* (ruling that the Court of Federal Claims lacked jurisdiction to hear a claim filed outside of the statute of limitations); *Goodrich v. United States*, 434 F.3d 1329, 1336 (Fed. Cir. 2006) (affirming the Court of Federal Claim's dismissal of a claim for lack of jurisdiction under the statute of limitations).

## IV.  DISCUSSION

Affording Mr. Henderson, a *pro se* plaintiff, the due liberal reading of his pleadings, the Court fairly construes his complaint to assert three causes of action: a tort claim based on alleged "maltreatment" during Mr. Henderson's time in the Marines; a claim for back pay, arising under the Military Pay Act, 37 U.S.C. § 204, for wrongful discharge; and a claim for disability retirement benefits pursuant to 10 U.S.C. § 1202. *See* Compl. at 3-4.

Each of Mr. Henderson's claims must be dismissed for lack of jurisdiction. First, pursuant to the Tucker Act, this Court has no jurisdiction over tort claims against the United States. Second, Mr. Henderson first filed his complaint in 2017, beyond the six-year statute of limitations for his unlawful discharge and disability retirement claims, which accrued in 1977 and 2005, respectively. Because Mr. Henderson's claims do not meet the jurisdictional requirements, the Court is unable to proceed to the merits of the case.

### A.  Tort Claim

To the extent that Mr. Henderson seeks money damages for alleged "maltreatment" during his time in the Marines, the claim constitutes a tort claim over which the Court of Federal Claims has no jurisdiction. By virtue of the Tucker Act, this Court explicitly and unambiguously "lacks jurisdiction over tort actions against the United States." *Brown v. United States*, 105 F.3d 621, 623 (Fed. Cir. 1997); *see also* 28 U.S.C. § 1491(a)(1) (conferring jurisdiction over limited categories of cases "not sounding in tort"). This fundamental limitation means that the Court has no jurisdiction over, among other torts, "claims that defendant engaged in negligent, fraudulent, or other wrongful conduct when discharging its official duties[,]" *Cottrell v. United States*, 42 Fed. Cl. 144, 149 (1998); claims for "pain and suffering[,]" *Pratt v. United States*, 50 Fed. Cl. 469, 482 (2001); and claims for "emotional distress, anguish, and humiliation." *Curry v. United States*, 221 Ct. Cl. 741, 746 (1979).

In his complaint, Mr. Henderson seeks "4 million dollars" for alleged "maltreatment" during his time in the Marines. Compl. at 4. He alleges that he "was given bad water, harassed, [and] denyed [*sic*] leave[.]" *Id.* Subsequent filings by Mr. Henderson allege further "bad conduct" by the government. *See* Pl's Resp. at 2. Each of these claims amounts to an allegation that Mr. Henderson suffered harm from intentional and/or negligent mistreatment by the government and its officials. These claims sound in tort, placing them outside the ambit of the Tucker Act. Accordingly, all such claims are dismissed for lack of jurisdiction.

### B.  Military Pay Act Claim

Mr. Henderson's claim for back pay is barred by this Court's six-year statute of limitations. In his complaint, Mr. Henderson provides sporadic details about his "bad conduct discharge" from the Marines and requests that the Court "overturn the discharge to a medical

4

discharge" and award "back pay for past yrs [*sic*]." Compl. at 3-4. Though not explicitly invoked by Mr. Henderson, the Military Pay Act, 37 U.S.C. § 204, governs claims that a plaintiff, having been wrongfully discharged from the military, "is entitled to money in the form of the pay that the plaintiff would have received but for the unlawful discharge." *Martinez*, 333 F.3d at 1303. As such, the Court infers that Mr. Henderson brings his claim for back pay pursuant to the Military Pay Act—a "money-mandating statute" upon which claims, if timely, may be heard by this Court. *See Smith v. Sec'y of the Army*, 384 F.3d 1288, 1294 (Fed. Cir. 2004).

Though the type of claim is proper under the Tucker Act, Mr. Henderson's claim fails to meet the jurisdictional timeliness requirement of 28 U.S.C. § 2501. It is well-established that "[i]n a military discharge case, . . . the plaintiff's cause of action accrues at the time of the plaintiff's discharge." *Martinez*, 333 F.2d at 1303. "If the plaintiff does not file suit within the six-year limitation period prescribed in 28 U.S.C. § 2501, the plaintiff loses all rights to sue for the loss of pay stemming from the challenged discharge." *Id.* at 1304. Availability of, or participation in, administrative remedies does not toll or renew the statute of limitations. *Id.*

In other words, Mr. Henderson's right to sue for wrongful discharge arose on the date of his discharge—March 5, 1977. Thus, to comply with the six-year statute of limitations prescribed by 28 U.S.C. § 2501, Mr. Henderson was required to bring his suit by March 5, 1983. Mr. Henderson first brought this claim in 2017, far beyond the required six-year window. Mr. Henderson's multiple petitions to the BCNR between 2005 and 2017 do not impact the running of the statute of limitations. As discussed above, the statute of limitations is a jurisdictional bar and prevents the Court from proceeding to the merits of the claim. Mr. Henderson's claim for back pay, therefore, is dismissed for lack of jurisdiction.

### C.   Disability Retirement Claim

Mr. Henderson's claim for disability retirement also fails on timeliness grounds, though the statute of limitations for such a claim operates differently from that described for Military Pay Act claims. Mr. Henderson alleges a number of mental conditions from which he suffered during his time in the Marines and which he believes entitled him to a "medical discharge." Compl. at 4. Claims for disability retirement pay arise under 10 U.S.C. § 1201, which entitles a servicemember to retirement pay upon a determination that the servicemember is unfit to perform his or her duties due to a disability incurred while entitled to basic pay. 10 U.S.C. §1201(a). The statute is money-mandating and thus provides a cause of action in this Court under the Tucker Act. *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005).

Whereas a wrongful discharge claim accrues at the time of discharge, a disability retirement claim "does not accrue until the appropriate military board either finally denies such a claim or refuses to hear it." *Id.* at 1224. A hearing before the board is a mandatory remedy, meaning that a plaintiff may not bring suit in this Court until the board renders a final decision. *See Friedman v. United States*, 159 Ct. Cl. 1, 19 (1962) ("[W]ithout [a final decision], the case in this court would be dismissed as premature on the ground that the plaintiff did not seek or obtain a final decision within the administrative hierarchy."). In other words, "[t]he decision by the first statutory board which hears or refuses to hear the claim is the triggering event" that

causes the plaintiff's claim to accrue and the statute of limitations to begin to run. *Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990).

The triggering event is the decision by the *first* competent board; except in limited circumstances, subsequent petitions to the board for reconsideration do not toll the statute or cause a new claim to accrue. *Id.* at 1560. To restart the statute of limitations, a petition for reconsideration must include "a showing of new evidence or changed circumstances" and "must be made within a reasonable time." *Smalls v. United States*, 298 F.App'x 994, 996 (Fed. Cir. 2008). "[T]o deprive an administrative decision of finality for statute of limitations purposes[,]" the time for reconsideration is usually short. *Van Allen v. United States*, 70 Fed. Cl. 57, 63 (2006), *aff'd,* 236 F.App'x 612 (Fed. Cir. 2007). *See id.* (two years between the final decision and the petition for reconsideration "clearly exceeds the short or reasonable period" required to restart the statute of limitations); *Smalls*, 298 F.App'x at 995-97 (multiple petitions five to thirteen years after the final decision were "long past the point of reasonableness"). Further, "there is but one claim for disability, and different diagnoses attaching to the same set of facts will not result in a new cause of action." *Avery v. United States*, No. 11-861C, 2012 WL 3854790, at *5 (Fed. Cl. Sept. 5, 2012) (citing *Friedman*, 159 Ct. Cl. at 33 ("[O]ut of one set of facts and circumstances involving the claimant's separation from service there arises but one claim for the same kind of relief.")).

The BCNR first denied Mr. Henderson's application for correction of his record on February 18, 2005. Def. Ex. 1 at 1. As such, the statute of limitations for the claim began to run on that date, unless a subsequent petition for reconsideration worked to deprive the BCNR's decision of its finality. Mr. Henderson submitted subsequent petitions for reconsideration, which were denied in 2008 and 2012 for failure to produce new evidence. *Id.* at 4, 6. Mr. Henderson's final petition for reconsideration, though it contained new evidence according to the board, was denied on March 27, 2017. *Id.* at 8.

These three petitions for reconsideration do not affect the statute of limitations, which began to run upon the first denial by the board on February 18, 2005. The first two petitions lacked any new evidence and therefore cannot serve as the basis to restart the statute. Though the third petition contained new evidence, it was brought well beyond a short and reasonable time after the first denial. It is unclear exactly what new evidence Mr. Henderson presented to the board in his final petition, but such information cannot overcome the twelve-year gap between petitions. Further, although the Board considered the new evidence, it appears to have evaluated the same contentions that Mr. Henderson made in his first petition—namely, that Mr. Henderson's schizophrenia contributed to the circumstances surrounding his bad conduct discharge. In other words, the new evidence pertained to the same circumstances already considered by the BCNR in its 2005 decision and led to the same decision by the BCNR. Such facts make it difficult to conclude that the latter petition deprived the former of its finality so as to restart the statute of limitations, which had already fully expired.

Mr. Henderson had six years after the initial denial to file his claim in this Court. Instead, Mr. Henderson petitioned the board three times between 2005 and 2017. None of these petitions functioned to deprive the board's first decision of its finality, as none met the necessary conditions of containing new evidence and being brought within a reasonable time. As such, for

this Court to have jurisdiction, Mr. Henderson needed to bring this claim by February 18, 2011. He did not bring the claim until 2017. Thus, Mr. Henderson's claim for disability retirement pay is dismissed for lack of jurisdiction.

### D. Tolling the Statute of Limitations

Because Mr. Henderson brought his claims outside of the six-year statute of limitations, he can save them only by showing that the statute of limitations was tolled due to his disability. He has not met this burden, and therefore there are no grounds to toll the statute.

While equitable tolling of the statute of limitations is not permitted in this Court, *John R. Sand & Gravel Co.*, 552 U.S. at 133, a statutory exception allows "[a] petition on the claim of a person under legal disability . . . at the time the claim accrues [to] be filed within three years after the disability ceases." 28 U.S.C. § 2501. "The burden of proving mental incapacity is on the claimant in order to qualify as suffering from a legal disability within the intendment of 28 U.S.C. § 2501." *Goewey v. United States*, 222 Ct. Cl. 104, 112 (1979). The burden is heavy, as "[t]he law presumes sanity and competency rather than insanity and incompetency." *Id.* Thus, tolling requires a "serious impediment" that "preclud[es] a person from comprehending rights which he would be otherwise bound to understand." *Id.* at 544-45. "[P]articipation in administrative or legal proceedings may indicate that the plaintiff comprehended his legal rights and did not suffer a lack of mental capacity." *Jeun v. United States*, 128 Fed. Cl. 203, 216 (2016) (citing *Goewey*, 222 Ct. Cl. at 116).

In his complaint, Mr. Henderson makes numerous statements about his mental condition—both during and after his time in the Marines—that, if substantiated, could reasonably lead to a finding that he was disabled within the meaning of 28 U.S.C. § 2501. Mr. Henderson states that he was "hyper manic schizo [*sic*]" and "delusional and hallucinating" while in the Marines. Compl. at 3. He further asserts that beginning eight years after his discharge, he "ended up on a neuropsychological ward for 30 yrs [*sic*]" until 2016. *Id.* Additionally, the BCNR decisions indicate that Mr. Henderson was diagnosed with a personality disorder in 1975 and with schizophrenia sometime after his discharge. Def. Ex. 1 at 8.

Detrimental to the argument that the statute of limitations should be tolled, however, is the fact that Mr. Henderson repeatedly engaged in the administrative process from 2005 to 2017. Mr. Henderson's petitions to the BCNR indicate that he was aware of his legal rights beginning in 2005 at the latest. It appears that in those petitions, Mr. Henderson made substantially the same arguments and sought the same relief as he does in this case. The BCNR rejected the argument that Mr. Henderson's misconduct in the Marines was due to schizophrenia and denied his request to recharacterize his discharge as a medical discharge. Def. Ex. 1 at 2. This strongly supports a conclusion that Mr. Henderson understood not only the circumstances of his discharge but also his potential entitlement to legal remedies.

Considering this, Mr. Henderson has not met his burden to produce evidence that substantiates a finding that he was disabled, so as to toll the statute of limitations beyond 2005 at the very latest. Accordingly, the Court concludes that no tolling is warranted and that the statutes of limitations on Mr. Henderson's claims expired as discussed above.

### E. Motion to Transfer

Finally, Mr. Henderson's Motion to Transfer his case is denied. Transfer of a case requires that: 1) the transferor court lacks jurisdiction; 2) the transfer is in the interest of justice; and 3) the case could have been brought originally in the transferee court. *See* 28 U.S.C. § 1631. Further, once a case has been transferred, law-of-the-case considerations disfavor retransfer of the case back to the original court except in "exceptional circumstances" such as where the initial decision was "clearly erroneous and would work a manifest injustice." *Rodriguez v. United States*, 862 F.2d 1558, 1560 (Fed. Cir. 1988) (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988)).

It is immediately apparent that Mr. Henderson's wrongful discharge claim and retirement disability claim cannot be transferred. Though lacking jurisdiction over these claims on timeliness grounds, the Court of Federal Claims has exclusive jurisdiction over claims in excess of $10,000 that arise under the Tucker Act. *See* 28 U.S.C. 1491; 28 U.S.C. § 1346(a)(2). Mr. Henderson's military pay claims fall within this category and thus are within the exclusive jurisdiction of this Court, meaning that no potential transferee court exists.

Further, the Court will not retransfer the case and disturb the District Court's determination that it had no jurisdiction over any claim in the complaint. Pursuant to the Federal Tort Claims Act, district courts have exclusive jurisdiction over tort claims against the government. 28 U.S.C. § 1346(b)(1). Prior to transferring the case to this Court, the District Court did not identify any tort claim contained within the complaint but rather construed it only as a claim for military back pay and disability retirement benefits. Given that the complaint was difficult to comprehend in places, it cannot be said that the District Court was "clearly erroneous" in that determination. Though the Court here engaged in a liberal reading of Mr. Henderson's complaint to address any potentially discernible claim, the Court finds that the District Court's interpretation was reasonable. As such, there are no "exceptional circumstances" or "manifest injustice" to warrant retransfer back to the District Court. Mr. Henderson's Motion to Transfer is therefore denied.

### V. CONCLUSION

Though respectful of Mr. Henderson's service and sympathetic to his experiences, the Court lacks the authority to hear his claims. The Court of Federal Claims has no jurisdiction over tort claims or claims filed outside of the six-year statute of limitations. Mr. Henderson filed his claims in 2017, far beyond their expiration. Further, Mr. Henderson has not produced evidence that would support tolling the statute of limitations. Finally, transfer of the case is not warranted.

Therefore, Defendant's Motion to Dismiss is **GRANTED**. Plaintiff's Motion to Transfer is **DENIED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

                                                    s/ Thompson M. Dietz
                                                    THOMPSON M. DIETZ, Judge